1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9  CLAIRE E. HAMILTON,

10          Plaintiff,                        No. CIV S-06-1825 GGH

11      vs.

12  MICHAEL J. ASTRUE,[1]                      ORDER
    Commissioner of
13  Social Security,

14
            Defendant.
15  _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17  Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB")

18  under Title II of the Social Security Act ("Act").

19  BACKGROUND

20          Plaintiff, born January 26, 1947, applied for disability benefits on May 25, 2004.

21  (Tr. at 48.)  Plaintiff alleged she was unable to work due to fibromyalgia, chronic fatigue

22  syndrome, insomnia, irritable bowel syndrome, recent TIA (mini-stroke), low back, leg and knee

23  pain, headaches, dizziness, and TMJ.  (Tr. at 58, 16, 38.)

24  _____

25      [1]  Michael J. Astrue became Commissioner on February 12, 2007.  Accordingly, he
    should be substituted as defendant in this suit.  Fed. R. Civ. P. 25(d)(1).  No further action need
26  be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
    405(g).

Chronic Fatigue Syndrome ("CFS") has been addressed in Social Security Ruling 99-2p which sets forth guidelines for evaluating this condition.

> Under the CDC definition, the hallmark of CFS is the presence of clinically evaluated, persistent or relapsing chronic fatigue that is of new or definite onset (i.e., has not been lifelong), cannot be explained by another physical or mental disorder, is not the result of ongoing exertion, is not substantially alleviated by rest, and results in substantial reduction in previous levels of occupational, educational, social, or personal activities. Additionally, the current CDC definition of CFS requires the concurrence of 4 or more of the following symptoms, all of which must have persisted or recurred during 6 or more consecutive months of illness and must not have pre-dated the fatigue:

Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;

> Sore throat;
> Tender cervical or axillary lymph nodes;
> Muscle pain;
> Multi-joint pain without joint swelling or redness;
> Headaches of a new type, pattern, or severity;
> Unrefreshing sleep; and
> Postexertional malaise lasting more than 24 hours.

Fibromyalgia is difficult to diagnose because it lacks objective signs and symptoms, and its subjective symptoms mimic many other common "everyday" problems. Assessing it for a disability evaluation is difficult because the evaluation necessarily is dependent on subjective pain complaints. Over-exaggerated complaints of disabling pain are difficult to differentiate from bona fide claims. Because the court finds the ALJ failed to develop the record sufficiently to make this difficult determination, the court orders that plaintiff's Motion for Summary Judgment be granted, the Commissioner's Cross Motion for Summary Judgment be denied, this matter be remanded to the Commissioner for further proceedings, and judgment be entered for the plaintiff pursuant to sentence four of 42 U.S.C. § 405(g).

\\\\\

\\\\\

\\\\\

1          In a decision dated March 13, 2006, ALJ Antonio Acevedo-Torres determined

2   plaintiff was not disabled.[2]  The ALJ made the following findings:

3          1.    The claimant meets the insured status requirements of the
               Social Security Act through December 31, 2007.
4
5          2.    The claimant has not engaged in substantial gainful activity
               at any time relevant to this decision (20 CFR 404.1520(b)).
6
           3.    The claimant has the following severe impairments: chronic
7                fibromyalgia, degenerative joint disease of the right knee,
               and probable chronic fatigue syndrome (CFS) (20 CFR
8                404.1520(c)).
9          4.    The claimant does not have an impairment or combination
               of impairments that meets or medically equals one of the
10               listed impairments in 20 CFR Part 404, Subpart P,
               Appendix 1 (20 CFR 404.1520(d), 404.1525 and
11               404.1526).

12

13         [2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
14   disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
    part, as an "inability to engage in any substantial gainful activity" due to "a medically
15   determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
    A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
16   See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
    137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
           Step one:  Is the claimant engaging in substantial gainful
17   activity?  If so, the claimant is found not disabled.  If not, proceed
    to step two.
18         Step two:  Does the claimant have a "severe" impairment?
    If so, proceed to step three.  If not, then a finding of not disabled is
19   appropriate.
           Step three:  Does the claimant's impairment or combination
20   of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
    404, Subpt. P, App.1?  If so, the claimant is automatically
21   determined disabled.  If not, proceed to step four.
           Step four:  Is the claimant capable of performing his past
22   work?  If so, the claimant is not disabled.  If not, proceed to step
    five.
23         Step five:  Does the claimant have the residual functional
    capacity to perform any other work?  If so, the claimant is not
24   disabled.  If not, the claimant is disabled.  _____
    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26   burden if the sequential evaluation process proceeds to step five.  Id.

5.      After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform medium work, lifting 50 pounds occasionally and 25 pounds frequently, walking/standing six hours, sitting six hours, occasionally performing postural activities (these are supported by her chronic fibromyalgia, degenerative joint disease of the right knee, and probable CFS), and she has no manipulative, visual, communicative, mental, or environmental limitations.

6.      The claimant is capable of performing past relevant work as a contracts manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.      The claimant has not been under a "disability," as defined in the Social Security Act, from August 2, 2002 through the date of this decision (20 CFR 404.1520(f)).

(Tr. at 16-22.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Fully Develop the Record as Required by Social Security Ruling 99-2p; B.  Whether the ALJ Improperly Rejected Plaintiff's Credibility; C.  Whether the ALJ Failed to Properly Evaluate the Opinions of Plaintiff's Treating Physicians; and D.  Whether the ALJ's Conclusion that Plaintiff Has the Residual Functional Capacity to Perform Medium Work is not Supported by Substantial Evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

1   (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

2   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

3   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

4   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

5   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

6   ANALYSIS

7         A.  Whether The ALJ Failed to Fully Develop the Record as Required by Social Security

8   Ruling 99-2p

9         Plaintiff first contends that the ALJ failed to follow Social Security Ruling

10  ("SSR") 99-2p which sets forth guidelines and procedures to analyze CFS and fibromyalgia.

11        As set forth above, SSR 99-2p sets forth six signs, four of which must be

12  clinically documented over a period of at least six months.  It is not disputed that the ALJ found

13  plaintiff 's "probable CFS" to be a severe impairment, along with chronic fibromyalgia, and

14  degenerative joint disease of the right knee.  (Tr. at 16.)  What plaintiff objects to is the provision

15  in this ruling which states:

16         if the adjudicator finds that the evidence is inadequate to determine
           whether the individual is disabled, he or she must first recontact
17         the individual's treating or other medical source(s) to determine
           whether the additional information needed is readily available ...
18         Only after the adjudicator determines that the information needed
           is not readily available from the individual's health care
19         provider(s), ..., should the adjudicator proceed to arrange for a
           consultative examination(s).
20

21  SSR 99-2p at *6.

22        Plaintiff asserts that the ALJ ordered a consultative exam after the hearing, when

23  he should have re-contacted the treating physicians as this ruling requires.

24        Defendant argues that when the ALJ suggested the consultative exam at the

25  hearing, plaintiff's counsel (attorney Lee who continues to represent plaintiff here), agreed that

26  such an exam was appropriate.  (Id. at 330-31.)  Defendant asserts that plaintiff is bound by

1  counsel's conduct because counsel acquiesced in this decision; however, any such concession

2  cannot be construed as a waiver of this requirement in the ruling.  The attorney only argued the

3  point of what specialty the consulting examiner should have in order to evaluate CFS or

4  fibromyalgia, because that was the only issue raised by the ALJ.  (Id.)  The ALJ at first wanted to

5  refer the case to an orthopedist, and plaintiff's counsel suggested a rheumatologist was more

6  appropriate.  (Id. at 330.)  After the ALJ responded, "yeah, but there are – there is no significant

7  rheumatoid factor they found here," counsel argued that the Kaiser treating physicians sent

8  plaintiff's case to their in house rheumatologist, Dr. Fernando, to firm up the diagnosis.  The ALJ

9  then disregarded this suggestion and stated that an internal medicine specialist was more

10  appropriate than a rheumatologist.  Counsel conceded only that internal medicine was closer than

11  orthopedics.  (Id.)

12          Social Security Rulings are binding on the ALJ.  Bunnell v. Sullivan, 947 F.2d

13  341, 353 (9th Cir. 1991), citing 20 CFR § 422.406(b)(1).  SSR 99-2p specifically requires first re-

14  contacting the treating source.  It was permissible for the ALJ to obtain a further consultation

15  with an appropriate specialist, but only after he first determined that the information he needed

16  was not available through the treating sources.  However, counsel cannot agree to forego this

17  provision, and then claim upon review that the ALJ erred because the ALJ should have known

18  better.  The lack of objection at the time would have led any judge to believe that there was not

19  much point to pursuing step 1 (acquiring more existing information) before going to step 2

20  (consultative examination).  Moreover, to this day, counsel does not indicate what would have

21  been the point at the time the matter was under discussion, unless the point was to call the Kaiser

22  chronic fatigue specialist to review the matter and render an opinion.

23          The issue of the ALJ's lack of analysis of the later filed Kaiser opinion will be

24  discussed as a separate issue.  But, on the record here, plaintiff waived any objection to the ALJ's

25  going straight to the consultative examination prior to further exhausting existing sources of

26  information.

1    B.    The ALJ Failed to Property Evaluated The Opinions of Plaintiff's Treating

2 Physicians

3          Plaintiff contends that the ALJ erred in rejecting the opinions of plaintiff's

4 treating physicians, and that Dr. Beech, the consultative examiner, admitted that her evaluation

5 was based on one interval in the course of plaintiff's illness.  This is the sum total of plaintiff's

6 argument.  Bare contention, unsupported by explanation or authority, may be deemed waived.

7 See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents

8 no explanation in support of claim of error waives issue).  Nevertheless, the court has

9 independently reviewed the record, and finds error in the ALJ's analysis.

10          The weight given to medical opinions depends in part on whether they are

11 proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

12 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[3]  Ordinarily,

13 more weight is given to the opinion of a treating professional, who has a greater opportunity to

14 know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

15 Cir. 1996).

16          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

17 considering its source, the court considers whether (1) contradictory opinions are in the record;

18 and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

19 a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

20 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

21 be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

22

23          [3]  The regulations differentiate between opinions from "acceptable medical sources" and
"other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24 psychologists are considered "acceptable medical sources," and social workers are considered
"other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25 when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26 accordingly are given less weight than opinions from "acceptable medical sources."

1 professional's opinion generally is accorded superior weight, if it is contradicted by a supported

2 examining professional's opinion (supported by different independent clinical findings), the ALJ

3 may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

4 Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

5 weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir.

6 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and

7 supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999)

8 (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

9 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

10 insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

11          In this case, there was no contradictory opinion as to plaintiff's diagnosis.

12 Consultative examiner Dr. Beech, an internist, acknowledged the diagnoses of CFS and

13 fibromyalgia "per history."[5]  Where the contradiction lies is between the various physicians'

14 opinions on plaintiff's disability.  Dr. Beech thought plaintiff could work, standing and walking

15 for six hours a day, unlimited sitting, lifting and carrying up to 25 pounds, and occasionally

16 stooping and crouching.  (Id. at 297.)  On the other hand, some of plaintiff's treating physicians

17 opined that plaintiff was totally disabled.  It is true that such opinions are not binding on this

18 court.  "A statement by any physician that the claimant is disabled or unable to work is a

19 conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his

20 determination as to whether the claimant is disabled within the meaning of the [Act]."  Murray v.

21 Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988),

22

23          [4] The factors include: (1) length of the treatment relationship; (2) frequency of
24 examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
(5) consistency; (6) specialization. 20 C.F.R. § 404.1527

25          [5] She also diagnosed high blood pressure, possible history of cerebrovascular disease
26 with transient ischemic attack in the past, but no residual deficits, and "knee pain with crepitus
and decreased squatting ability most likely osteoarthritis."  (Id. at 296-97.)

8

20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th Cir. 1989).

Nevertheless, the ALJ is not free to completely ignore a treating physician's opinion without giving specific and legitimate reasons.  After the hearing, Dr. Lee, one of plaintiff's Kaiser treating physicians and a CFS specialist, opined that plaintiff was totally disabled.  (Id. at 306.)  He had treated plaintiff beginning on May 11, 2005, until October 4, 2005, by giving her vitamin B-12 injections as often as every few days.  (Id. at 255-91.)  In his letter, dated November 11, 2005, prior to the issuance of the ALJ's decision, Dr. Lee gave a complete and thorough explanation for his diagnosis of CFS, his opinion of total disability.  (Id. at 305-06.)  He stated that he based his opinion on his fifteen years experience dealing with over 1,000 CFS patients.  He added that he was considered Kaiser Sacramento's chronic fatigue specialist.  (Id.)

Although this letter was submitted after the hearing and before the ALJ's decision, it was not even mentioned by the ALJ, let alone specifically rejected.  This failure, along with the ALJ's failure to first re-contact plaintiff's treating physicians, and the lack of a consultative exam by a rheumatologist or other CFS specialist rather than an internist, require remand for further analysis and possibly further development of the record.  As a result, the court will not address plaintiff's other assertions of error.

CONCLUSION

The court finds the ALJ's assessment is not supported by substantial evidence in the record or based on the proper legal standards.  Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is GRANTED, the Commissioner's Motion for Summary Judgment is DENIED, this matter is remanded to the Commissioner for further proceedings in

\\\\\

\\\\\

\\\\\

9

1   accordance with this opinion, and the Clerk is directed to enter judgment for the plaintiff pursuant

2   to sentence four of 42 U.S.C. § 405(g).

3   DATED: 8/21/07                                    /s/ Gregory G. Hollows

4                                                     _____
                                                      GREGORY G. HOLLOWS
                                                      U.S. MAGISTRATE JUDGE

5   GGH/076
    Hamilton1825.ss.wpd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26